572 S.E.2d 916

**In re KRISTOPHER E.
and Kenneth C.E.**

**No. 30444.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 17, 2002.

Decided Nov. 4, 2002.

Gail Vorhees, Esq., Public Defender Corporation, Kingwood, for Kenneth E., Father, Appellant.

Melinda L. Russell, Esq., Morgantown, Guardian ad Litem for Kristopher E. and Kenneth C.E.

Darrell V. McGraw, Jr., Attorney General, Charleston, C. Carter Williams, Assistant Attorney General, Petersburg, for West Virginia Department of Health & Human Resources, Appellee.

PER CURIAM.

This is an appeal by Kenneth E., the natural father of two minors, Kristopher E. and Kenneth C.E., from an order of the Circuit Court of Preston County adjudicating him an abusive and neglectful parent. On appeal, Kenneth E. claims that the evidence fails to show that he has been abusive and neglectful and that, consequently, the decision of the circuit court is erroneous.

## I.

### FACTS

The appellant in this proceeding, Kenneth E., is the natural father of Kristopher E., who was born on January 1, 1987, and Kenneth C.E., who was born on March 8, 1988. The appellant and the children's mother were divorced shortly after the birth of Kenneth C.E., in the course of the divorce, their mother voluntarily surrendered custody of the children to the appellant.

In the years following the divorce, the two children demonstrated severe behavioral problems. For instance, when they were eight and nine years old, they burglarized a house in Maryland. They were also involved in a number of incidents of destroying property and of terrorizing animals. On one occasion, they stoned a cow until it was unconscious. They also had numerous behavioral problems at school.

The appellant made concerted efforts to deal with the children's problems. For instance, in 1992, the appellant consulted the Krieger Institute, an institution dealing with child behavioral problems, about the problems. He arranged counseling for the children at the Institute, and he himself took a parenting class. He later took and completed STEP parenting courses, and attended additional parenting classes provided by an agency in Maryland.

In 1996, the appellant married for a second time and moved to West Virginia. Following the marriage, Kenneth C.E. engaged in attention-seeking behavior. Among other things, he urinated on bathroom walls; he shoved pencils down a dryer; and he destroyed furniture with an ice pick and cut his clothes with scissors.

In 1998, the appellant became concerned over Kenneth C.E. after he began starting fires in the home and in the woods. He consequently had Kenneth C.E. admitted to Chestnut Ridge Hospital for a 30-day psychiatric examination. The examination resulted in the conclusion that Kenneth C.E. was immature and would outgrow certain of his problems.

Problems continued at home and Kristopher E. began pushing his stepmother around and bruising her. The situation reached the point where the appellant and his wife slept in a locked, downstairs bedroom at night to protect themselves from the children. They also locked their bedroom door during the day to prevent destruction of their property.

In May 2001, the appellant, who was in the National Guard, traveled to California for training. In his absence, the children continued to act up, and on May 23, 2001, their stepmother requested that the Prosecuting Attorney institute juvenile proceedings against them. The Prosecuting Attorney refused to do so. Subsequently, on May 24, 2001, the children's stepmother called the hotline at the Department of Health and Human Resources and suggested that she was going to beat or switch Kristopher E. if he remained in the home. The appellant was contacted in California and asked why the children should not be removed from the home, and he said that he could not answer that question and that, perhaps, the children should be removed. As a consequence, both children were removed from the home on May 24, 2001, and the abuse and neglect petition instituting the present proceeding was filed on the same day.

A preliminary hearing was held in the matter on May 31, 2001, and at that hearing the court found that there was probable cause for the emergency removal of the children. At a subsequent hearing, the appellant, who had been charged with calling the children abusive names ("tub of lard," etc.), admitted that he had used the names on several occasions and that he had sent the children to bed without dinner on four occasions. The events justifying their being sent to bed without dinner were two food fights at the table, a school incident involving a female classmate, and Kristopher E. lying about a note from school.

As the proceeding developed, the appellant executed an agreement with the Department of Health and Human Resources in which he agreed voluntarily to surrender custody of the children to the Department.

The court found the voluntary surrender agreement appropriate, but apparently concluded that it could not properly make the disposition without adjudicating the appellant an abusive and neglectful parent. The court, therefore, proceeded to rule that the evidence adduced showed that the appellant was an abusive and neglectful parent.

It is from the court's ruling that the appellant now appeals. In appealing, he does not object to the children being removed from his custody, but he believes that the removal should occur pursuant to his agreement with the Department of Health and Human Resources. He claims that the evidence fails to prove that he was an abusive and neglectful parent, and he claims that the circuit court erred in holding that he was.

## II.

### STANDARD OF REVIEW

In Syllabus Point 1 of *In the Interest of: Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), this Court stated:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

## III.

### DISCUSSION

In reaching the conclusion that the appellant had abused and neglected Kristo-

pher E. and Kenneth C.E., it appears that the trial court in the present case relied principally upon evidence that on May 24, 2001, the children's stepmother had told a Child Protective Services worker that she was going to beat or switch Kristopher E. unless he was removed from the home. The court found that when the appellant, who was then in California, was advised of the situation, he did not disagree with the threats made by his wife, but told the social worker handling the case to remove the children from the home. The court noted that the appellant further refused to accept services designed to prevent the removal. The court found:

> The father and stepmother have occasionally used the withholding of meals as punishment for the children, for such offenses as failure to complete chores, to the extent that the children felt that they had to earn their food. While such practice by no means rose to the level of nutritional deprivation, when coupled with other improper disciplinary approaches, it contributed to emotional abuse of the children.

Finally, the court noted that there was testimony by the children suggesting that they had occasionally been physically corrected. The court concluded:

> The evidence shows that for many years, [the appellant] .... attempted to provide all of the necessities of life to both children, including seeking out mental health services for them; ... [t]he evidence shows that, in many ways, [the appellant] ... tried to properly parent the Infant Children; ... [r]egardless of the number of [the appellant's] ... previous efforts to properly parent the children, his refusal to intervene on their behalf on May 24, 2001 constitutes neglect of the Infant Children....

After reviewing the circuit court's decision, this Court cannot find that the court's factual findings were clearly erroneous. There was evidence that the children's stepmother had threatened to beat or switch Kristopher E. on May 24, 2001, and there was also evidence that the appellant had indicated to the Child Protective Service worker handling the case that he did not disagree with his wife's threats and that he refused to accept services designed to prevent removal.

As has previously been stated, the circuit court apparently based its ultimate decision to terminate custody on the conclusion that the children faced a threat at home, rather than on actual physical abuse or neglect which had occurred prior to the filing of the petition.

The circuit court rendered its decision in the case on November 1, 2001. At the time, there was some question in the law as to whether a trial court had authority in an abuse and neglect proceeding to accept a voluntary relinquishment of parental rights in an abuse and neglect proceeding and to terminate parental rights without ruling on the final question of abuse and neglect.

Subsequent to the circuit court's entering its final order, this Court, in the case of *In re: James G. and Emmett M.L., III,* 211 W.Va. 339, 566 S.E.2d 226 (2002), recognized that a court could accept a parent's voluntary relinquishment of parental rights and dispose of an abuse and neglect proceeding without adjudicating the abuse and neglect question.

In reviewing the facts of the present case, the Court believes that it is a very close question as to whether the circuit court's decision was clearly erroneous. As indicated in *In the Interest of: Tiffany Marie S., id.,* a finding should be deemed clearly erroneous if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In the present case, the facts show that the appellant and his wife, although plainly disappointed and profoundly upset by the children's long misbehavior, had gone to extraordinary means to cope with the misbehavior in a socially accepted manner. Although they had selectively withheld meals from the children, there was no evidence that they had actually physically harmed the children in the past. The fact that the appellant's wife sought governmental intervention rather than actually beating the children militates against the conviction that she would have carried out her threats. By the time the appellant himself was contacted, the State had already intervened, suggesting that the

children were, in fact, protected from his wife's threats.

Although dealing with a very close case, this Court, after reviewing the evidence, comes away with the firm conviction that the trial court's conclusion is erroneous. The Court also senses that the trial court might have ruled otherwise if it had been plain that it could have accepted the voluntary relinquishment without reaching the ultimate abuse/neglect question.

In light of the foregoing, the Court believes that the judgment of the circuit court adjudicating the appellant an abusive and neglectful parent should be reversed. The Court, however, also believes that, given the overall facts of the case, the appellant's parental rights have been relinquished in accord with the agreement into which the appellant voluntarily entered, and that the trial court should so adjudicate.

## IV.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Preston County is reversed, and this case is remanded to the circuit court with directions that the circuit court dispose of the case consistent with this opinion.

Reversed and remanded with directions.